**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**David Lee HOLLAND, Jr., Defendant-
Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Kenneth CARRIERO, Defendant-
Appellant.**

**Nos. 20363, 20364.**

United States Court of Appeals,
Sixth Circuit.

Feb. 11, 1971.

Thomas A. Williams, Chattanooga,
Tenn., Court appointed, for defendant-
appellant David Lee Holland.

Barry L. Halpern, Miami, Fla., for de-
fendant-appellant, Kenneth Carriero.

Jerry Foster, Asst. U. S. Atty., Chattanooga, Tenn., for plaintiff-appellee; John L. Bowers, Jr., U. S. Atty., Chattanooga, Tenn., on brief.

Before TOM C. CLARK, Associate Justice,* PHILLIPS, Chief Judge, and PECK, Circuit Judge.

PHILLIPS, Chief Judge.

Kenneth Carriero and David Lee Holland, Jr., were indicted [1] in a single-count indictment charging them with interstate transportation of stolen jewelry, knowing the same to have been stolen, in violation of 18 U.S.C. § 2314. They were tried jointly and each was found guilty by the jury. Each appeals from the judgment of his sentence. We affirm.

On the evening of March 6, 1969, the residence of Mr. and Mrs. Schlossman in Miami, Florida, was burglarized and a quantity of jewelry was stolen. At that time Mr. and Mrs. Carriero, Herbert Jacobs, the eighteen year old brother of Mrs. Carriero, and Holland, an acquaintance of Jacobs and of the Carrieros, all were living together in the Carriero apartment in Miami.

On March 11, Mrs. Carriero and Jacobs went into a jewelry store in Chattanooga, Tennessee, and attempted to sell several items of jewelry having a minimum value of $23,500. The jeweler became suspicious and called the Chattanooga police. A Chattanooga police officer came to the store and, after questioning Jacobs and Mrs. Carriero, he asked Jacobs to accompany him to the police station while the detective checked out the jewelry. Jacobs accompanied the detective to the station. Mr. Carriero, who had remained outside the store in a parked car, and Mrs. Carriero followed Jacobs and the police officer to the station. At the station Jacobs and Mr. Carriero were questioned and about three hours after their arrival were arrested for vagrancy. The vagrancy charge was dismissed by the judge of the City Court, apparently on the same day. None of the statements made by any of the parties involved in the March 11 events were admitted in evidence at the trial in the District Court.

The Chattanooga police released the parties, but retained custody of the jewelry and turned it over to the FBI. On March 20, the jewelry was discovered to be the stolen property of the Schlossmans and a federal warrant was issued for the arrest of Mr. and Mrs. Carriero and Herbert Jacobs. The warrant was executed the following morning in Miami, where Mr. and Mrs. Carriero and Herbert Jacobs were arrested at their apartment. Holland was present at the apartment at the time of the arrest, but no warrant had been issued for his arrest and he was not taken into custody until sometime later. This was the first time any law enforcement authorities became aware of Holland or his association with the Carrieros or Jacobs.

District Judge Frank W. Wilson found that the arrests of the Carrieros and Jacobs were made pursuant to a warrant of arrest and were lawful in all respects. We agree with that conclusion. The fact that the officers did not have physical possession of the warrant at the time of the arrest is of no consequence to the validity of the arrest. Fed.R.Crim.P., Rule 4(c) (3); Barber v. United States, 412 F.2d 775 (5th Cir.).

At the time of the arrests, the FBI agents made a search of the apartment and found a receipt indicating the sale of jewelry in New York on March 17, 1969, and an airline ticket in the name of David Holland for a flight from Chattanooga to Miami dated March 11, 1969. These exhibits were introduced in evidence at the time of the trial.

The Carrieros and Jacobs were taken to FBI headquarters in Miami and Holland was asked to accompany them. Holland was questioned for approxi-

---

* Associate Justice of the Supreme Court of the United States (retired), sitting by designation.

1. Mrs. Cynthea Carriero, wife of Kenneth Carriero, was indicted for the same offense.

mately five hours by the FBI and then placed under arrest by the Miami police and transferred to the Dade County Jail. On March 27, different FBI agents went to the county jail and, after advising him of his constitutional rights, questioned Holland again.

The trial judge suppressed all statements by the Carrieros and Jacobs made prior to their being advised of their rights upon arrival at the FBI headquarters. He also refused to admit in evidence any statements of Holland prior to the March 27 questioning.

■ Both Carriero and Holland raise several issues on this appeal. Holland's primary complaint revolves around the admissibility as evidence of certain statements made by him to the FBI agents on March 27. We find that all the statements of Holland admitted in evidence by Judge Wilson were given freely and voluntarily after complete and adequate warnings as to his constitutional rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. These statements were not the "fruit of a poisonous tree" in the sense that they were made only because Holland was aware that the officers already had incriminating evidence against him. Before the March 27 interview, Holland steadfastly refused to answer questions by the FBI. From a reading of the record it is clear that he was well aware that he still had that right on March 27, but chose to waive it and discuss the matter with the officers. Nothing in the record indicates that he was confronted on March 27 with the airline ticket, jewelry receipt or any of the statements he had made prior to his arrest. Contrary to the situation in Fahy v. Connecticut, 375 U.S. 85, 84 S. Ct. 229, 11 L.Ed.2d 171, we hold that Holland's statements to the FBI were not precipitated by illegally obtained evidence.

■ Holland also complains that the Court committed reversible error when it admitted the airline ticket in evidence. He contends that the ticket was seized in violation of his Fourth Amendment rights. We find that the search which produced the ticket was incident to a lawful arrest. Moreover, we hold that the search was legal and within the confines of the applicable standard governing searches incident to arrest as defined in United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L. Ed. 653. This Court held in Turner v. United States, 426 F.2d 480 (6th Cir.), that the standard enunciated in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, is to be applied prospectively and not retroactively in this Circuit. The fact that the search was incident to the arrest of the Carrieros and Jacobs rather than Holland is of no consequence to the legality of the seizure. See United States ex rel. Spero v. McKendrick, 409 F.2d 181 (2d Cir.). The exclusionary rule was designed as a deterrent against unlawful searches by law enforcement officials, Kaufman v. United States, 394 U.S. 217, 224, 89 S. Ct. 1068, 22 L.Ed.2d 227, and was not intended as a stumbling block to legally conducted police investigations.

■ Holland also contends that his Fourth Amendment rights were violated under the rational of Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed. 2d 676, by virtue of the fact that his photograph was taken by the FBI on March 21, and used to have him identified in connection with a New York jewelry transaction. Reliance on *Davis* is misplaced. The facts in this case show, and the District Judge so held, that Holland voluntarily accompanied the FBI agents to their headquarters. There was no arrest or custody similar to that shown in *Davis*, and that case does not stand for the proposition that evidence voluntarily turned over to law enforcement officials is inadmissible as evidence against the person so cooperating.

Both Carriero and Holland contend, and it is Carriero's primary issue on this appeal, that the District Court committed reversible error in refusing to grant a severance. Each contends that he was prejudiced by the admission of

**890**

evidence that was probative only as to the other's guilt. We disagree. It is contended that Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, requires reversal. We do not so interpret *Bruton*. In that case, a confession by one co-defendant that he and the other co-defendant commited the robbery in question was admitted in evidence during their joint trial with limiting instructions for the jury to disregard the confession in determining the guilt of the other co-defendant. The Supreme Court set aside the conviction of Bruton, the other co-defendant, saying that:

> "[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored."

Immediately prior to making the statement quoted above, however, the Court said:

> "Not every admission of inadmissibile hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. 'A defendant is entitled to a fair trial but not a perfect one.' Lutwak v. United States, 344 U.S. 604, 619, [73 S.Ct. 481, 490, 97 L.Ed. 593]; see Hopt v. Utah, 120 U.S. 430, 438 [7 S.Ct. 614, 617, 30 L.Ed. 708]; cf. Fed.Rule Crim.Proc. 52(a). It is not unreasonable to conlude that in many such cases the jury can and will follow the trial judge's instructions to disregard such information." 391 U.S. 135, 88 S.Ct. 1627.

■ Considering the efficacy of the limiting instructions given by the District Judge in this case and the fact that the statements complained of were not of the inculpatory nature of a confession to a joint venture crime, we conclude that no reversible error was committed in admitting the statements. *See* Yates v. United States, 418 F.2d 1228 (6th Cir.). We find no abuse of discretion by the District Judge in failing to grant the motion for severance.

All other issues raised by the appellants have been considered and are found to be without merit.

Affirmed.