679 P.2d 635
**STATE of Idaho, Plaintiff-Appellant,**

v.

**David Allen BRADLEY,
Defendant-Respondent.**

No. 14292.

Supreme Court of Idaho.

Sept. 1, 1983.

Rehearing Denied March 28, 1984.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., and Myrna A.I. Stahman, Deputy Atty. Gen., Boise (argued), for plaintiff-appellant.

M. Jay Meyers, Pocatello, for defendant-respondent.

BISTLINE, Justice.

The State of Idaho appeals a district court order suppressing evidence obtained by the State as a result of the arrest of David Bradley in his Pocatello, Idaho, apartment on January 9, 1981. We affirm the district court order.

Bradley for some time had been under surveillance by the Idaho State Bureau of Narcotics on suspicion of drug trafficking. During the course of the investigation, Ed Rankin, a narcotics investigator, made a record check with the State of Oregon regarding Bradley. On January 1, 1981, he received a teletype from Oregon stating that there was a bench warrant issued in that state for Bradley's arrest for the felony of driving while his license was suspended. Eight days later on January 9, 1981, Officer Rankin and a second officer, Kim Peiper, went to Bradley's apartment for the stated purpose, as they would later contend, of determining whether he was the David Bradley wanted in Oregon. The officers had no Idaho arrest warrant and had not applied for one, nor did they have a copy of the Oregon warrant; all they possessed was the copy of the aforesaid teletype message.

Rankin knocked on Bradley's door and identified himself as a police officer. On conflicting evidence the trial court found that the officers entered Bradley's apartment without written or oral consent.[1] Once inside Bradley's apartment, the officers ran an NCIC check on Bradley and then placed him under arrest for the re-

---

**1.** Both Bradley and Ella Robinson, a friend of Bradley's who was in his apartment at the time of the arrest, testified that Bradley stated to the officers that he would come outside and talk to them but that the officers pushed their way past Bradley and into the apartment. Officers Ran-

kin and Peiper, however, testified that Bradley backed away and stepped aside from the door, allowing the officers to enter the premises. The trial court found that, "[t]he state's evidence, at best, shows only an acquiescence on the part of the defendant and not consent." R., p. 91.

ported Oregon traffic offense. Bradley was then given his *Miranda* rights.

During the course of the arrest inside Bradley's apartment, Officer Rankin observed next to the kitchen sink a plate containing green vegetable matter which was later identified as marijuana. Bradley subsequently made inculpatory statements regarding the location of other contraband on the premises; he was then taken to the Bannock County Jail and booked.

The investigators then sought a warrant to search Bradley's apartment which was supported by recitation of the contraband observed by the officers and the inculpatory statements made by Bradley at the time of his arrest. The warrant was issued; in executing it the officers seized additional contraband, and they then obtained an Idaho warrant for Bradley's arrest on a complaint charging possession of a controlled substance with intent to deliver. Bradley, already incarcerated on the basis of the Oregon teletype message, was readily arrested on the Idaho warrant. Oregon not only declined to extradite Bradley, but did not furnish the Idaho authorities with a certified copy of the Oregon warrant.

Suppression was sought upon alleged violation of the Constitutions of the United States and the State of Idaho. The prosecutor urged upon the trial judge that the entry was lawful under the provisions of I.C. § 19–4514.

The district court judge, the Honorable Arthur P. Oliver, in his written order stated: "It is one thing to permit the warrantless arrest of the defendant in a public place, but quite another to enter the defendant's residence, absent exigent circumstances, without a warrant and without consent." R., p. 89. Because the intrusion into defendant's home was invalid, the court held that the plain view doctrine was inapplicable. The court further held that the inculpatory statements made by Bradley subsequent to his arrest following unlawful entry were tainted and could not properly be used as a basis for obtaining the search warrant, precluding utilization

of the evidence obtained as a result of the ensuing search.

The State contends that Idaho peace officers may lawfully enter into a person's dwelling, without his consent and in the absence of exigent circumstances, for the purpose of making an arrest on the basis of mere knowledge of an outstanding felony warrant from another state. We do not agree.

The United States Supreme Court in *Payton v. New York*, 445 U.S. 573, 577, 100 S.Ct. 1371, 1375, 63 L.Ed.2d 639, 645 (1980), held unconstitutional New York statutes which authorized police officers to enter private residences without warrants and, if necessary, with force, in order to make routine felony arrests. In *Payton*, the Court ruled that the Fourth Amendment prohibits "the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest," *Id.* at 577, 100 S.Ct. at 1375, approving therein the language of the Second Circuit Court of Appeals:

> " 'To be arrested in the home involves not only the invasion attendant to all arrests but also an invasion of the sanctity of the home. This is simply too substantial an invasion to allow without a warrant, at least in the absence of exigent circumstances, even when it is accomplished under statutory authority and when probable cause is clearly present.' "

*Id.* at 588–89, 100 S.Ct. at 1381 (quoting *United States v. Reed*, 572 F.2d 412, 423 (1978), *cert. denied, sub nom. Goldsmith v. United States*, 439 U.S. 913, 99 S.Ct. 283, 58 L.Ed.2d 259).

The State contends that the entry into Bradley's apartment does not fall within the gambit of this rule because the officers possessed knowledge of an outstanding Oregon warrant for Bradley's arrest. The State argues that "once a judicial officer's determination of probable cause has been interposed between the zealous officer and the citizen, and a bench warrant has been issued, the requirements of the Fourth Amendment of the United States Constitu-

tion have been met." State's Brief, p. 12. The State sees no reason that the "judicial officer" need be an Idaho judge or magistrate.

■ However, it is a well-established principle of law that a warrant from one state has no force or validity outside the boundaries of that state. *Street v. Cherba,* 662 F.2d 1037 (4th Cir.1981); *State v. Everett,* 110 Ariz. 429, 520 P.2d 301 (1974), *cert. denied,* 419 U.S. 880, 95 S.Ct. 144, 42 L.Ed.2d 120 (1974); *People v. Coto,* 199 Colo. 508, 611 P.2d 969 (1980). *See* Am. Jur.2d Arrest § 66 (1969) and cases cited at note 18 therein.

*People v. Coto* is virtually identical. In that case, Colorado officers from the Organized Crime Strike Force were investigating a Michael Coto. The officers learned that a warrant had been issued in Florida for a Michael Coto's arrest. The officers went to the Coto residence, without a Colorado arrest warrant, but with knowledge of the Florida warrant, and entered the Coto residence absent consent or exigent circumstances. While in the Coto residence, the officers discovered a small quantity of marijuana and several large bales of the type used to transport marijuana. A search warrant was then procured by one of the officers. A subsequent search resulted in the seizure of two hundred pounds of marijuana. Thereafter, charges were filed against Coto for the unlawful possession of a dangerous drug with intent to dispense. The Colorado Supreme Court held that:

> "In this case, the Florida warrant, relied upon by the prosecution, has no effect in this state except to provide the probable cause needed to make an arrest of the defendant.... Although probable cause may be sufficient to justify a warrantless arrest, ... it is not sufficient under *Payton v. New York, supra* and *People v. Moreno, supra,* [176 Colo. 488, 491 P.2d 575 (1971) ] *to justify a warrantless entry into the defendants'*

*premises in the absence of exigent circumstances* extant and therefore the officers had no authority to enter the premises.

> "Accordingly, since the officers were not legitimately on the premises, the contraband discovered in a closet in plain view must be suppressed. In addition, evidence seized pursuant to the resulting search warrant, which was issued on the basis of the illegal entry, must be suppressed."

611 P.2d at 970–71 (citations omitted) (emphasis added).

■ Similarly, an arrest warrant issued in Oregon will not authorize police officers to cross a private Idaho threshold. There being no consent and no exigent circumstances,[2] the entry was no more lawful than the *Coto* entry.

To support its contention that a police officer may lawfully make an arrest on the basis of transmitted information of an outstanding arrest warrant, the State cites *Whiteley v. Warden of Wyoming State Penitentiary,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *Weeks v. Estelle,* 509 F.2d 760 (5th Cir.1975) *cert. denied,* 423 U.S. 872, 96 S.Ct. 139, 46 L.Ed.2d 103 (1975); *United States v. McCray,* 468 F.2d 446 (10th Cir.1972); *Bandy v. Willingham,* 398 F.2d 333 (10th Cir.1968) *cert. denied* 393 U.S. 1006, 89 S.Ct. 497, 21 L.Ed.2d 470 (1968); *State v. Crawford,* 99 Idaho 87, 577 P.2d 1135 (1978); *State v. Deschamps,* 94 Idaho 612, 495 P.2d 18 (1971) *cert. denied* 405 U.S. 1040, 92 S.Ct. 1310, 31 L.Ed.2d 581 (1972); and *State v. Polson,* 81 Idaho 147, 339 P.2d 510 (1959). None of these authorities purport to stand for the proposition that a warrant is not required to invade the sanctity and privacy extant in a person's dwelling. On the contrary, each case involves situations where transmitted information was said to afford probable cause for the stop and arrest of persons traveling in automobiles.

---

**2.** The State makes no contention that there were exigent circumstances. The State had eight days in which to have obtained an Idaho war-

rant for Bradley's arrest pursuant to I.C. § 19–4513.

The State additionally contends that the warrantless entry into Bradley's residence and his ensuing arrest was sanctioned by I.C. § 19–4514, which provides in part that:

"(1) The arrest of a person may be lawfully made by a peace officer *without a warrant* upon reasonable information that the accused stands charged with a felony by the courts of another state; ...." (Emphasis added.)

Prior to *Payton* the State's argument might have been seen as having some validity. Since *Payton* the statute, while it might support a warrantless arrest in a public place, will not support a warrantless entry into a defendant's private residence in order to make an arrest.

I.C. § 19–4513 enacted at the same time as I.C. § 19–4514, provides the procedure for obtaining an Idaho warrant to arrest a person who stands charged with a felony in another state:

"(1) Any judge or magistrate of the state of Idaho shall issue a warrant directing any peace officer to arrest the person named in said warrant ... provided that:

"(a) A peace officer of this state shall submit an affidavit that the person named in the warrant has absented himself from a sister state having been charged with a felony, *together with a certified copy of the complaint and warrant of arrest issued by a court of record in a sister state* to the court in support of issuance of the warrant; ...."

The district court properly applied the controlling Idaho statutes, and in a manner comporting with the holding of Payton.[3] The entry into the defendant's residence was in violation of the Fourth Amendment of the Constitution of the United States and equally in violation of Art. 1, § 17 of the Idaho Constitution. Accordingly, the order appealed from is

*Affirmed.* Costs awarded to respondent.

DONALDSON, C.J., and HUNTLEY, J., concur.

BAKES, Justice, dissenting:

The issue posed in this case is: does an arrest in a private home, pursuant to an officer's knowledge of an out-of-state warrant for the occupant's arrest, violate *federal* constitutional standards?[1] The majority answers the question in the affirmative, but bases that answer on state law principles. Since this country, under federalism, is one united territory, federal constitutional standards cannot be based upon state law principles. If they were so based, fifty different standards would exist, and there would no longer be a "federal" constitutional requirement.

The fallacy of the majority's argument can easily be shown by an example. In this case, the warrant was issued in Oregon. If the defendant had lived in Ontario, Oregon, and police, with knowledge of the warrant issued in another part of the state, had proceeded to arrest the defendant in his own home, would his federal constitutional rights have been violated? Of course not. *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), relied upon by the majority opinion, is clear on that point. Why, then, once the scene is set across a *state* border, does there suddenly appear to be a violation of federal constitutional principles? In a situation such as this, I cannot see how a federal standard can be violated merely by crossing a state line. The majority's finding of a violation of the fourth amendment to the United States Constitution is unjustified.

---

**3.** Given our holding in this case, we need not address defendant's allegation that the suppression order should be upheld because his arrest on the Oregon felony driving while suspended charge was merely a pretext for discovering evidence to support another charge.

**1.** The majority, with no analysis accompanying its decision, has also ruled that the actions in this case violated the state Constitution. The federal constitutional requirement of a warrant is a strict requirement, and there should be no reason to require a stricter standard under our state Constitution than that required under the federal Constitution.

The precise question involved in this case is whether the police can enter a home to make an arrest based on their knowledge of an existing felony warrant from another jurisdiction. In *Payton v. New York*, cited by the majority, the United States Supreme Court held that officers could not enter a person's home to make an arrest *without a warrant,* absent consent or exigent circumstances. In *Payton* the court adopted the reasoning of the Second Circuit in *United States v. Reed,* 572 F.2d 412 (2d Cir.1978), *cert. denied* 439 U.S. 913, 99 S.Ct. 283, 58 L.Ed.2d 259:

> "To be arrested in the home involves not only the invasion attendant to all arrests but also an invasion of the sanctity of the home. This is simply too substantial an invasion to allow without a warrant, at least in the absence of exigent circumstances, even when it is accomplished under statutory authority and when probable cause is clearly present." 572 F.2d at 423.

Thus, the concern of the court in *Payton* was the invasion of the sanctity of the home without the safeguards inherent in the issuance of a warrant by a neutral, detached magistrate. As the United States Supreme Court stated in *Payton:*

> "It is true that an arrest warrant requirement may afford less protection than a search warrant requirement, but it will suffice to interpose the magistrate's determination of probable cause between the zealous officer and the citizen. If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law." 445 U.S. at 603, 100 S.Ct. at 1388.

The above quote reveals the major concern of the court in *Payton.* For the protection of constitutional rights, the court wanted participation by a judicial officer in the process leading to a defendant's arrest in his home. In the present case, a warrant had been issued, and thus a judicial officer had participated in the events leading up to the defendant's arrest. Thus, the underlying concern of the court in *Payton* was satisfied. The *Payton* court, if it were faced with a situation such as this, would no doubt find that no fourth amendment rights had been violated. Their concern, that of a *warrantless* entry into a private home, is not present here.

It is a fundamental premise of law that once a warrant has been issued, the arresting officer need not have possession of the warrant when making the arrest. *United States v. West,* 517 F.2d 483 (8th Cir.1975), *cert. denied* 423 U.S. 948, 96 S.Ct. 365, 46 L.Ed.2d 283; *United States v. Holland,* 438 F.2d 887 (6th Cir.1971); *Barber v. United States,* 412 F.2d 775 (5th Cir.1969); *United States v. Salliey,* 360 F.2d 699 (4th Cir.1966). This is true regardless of where the warrant itself is issued. *United States v. Jones,* 696 F.2d 479 (7th Cir.1982), *cert. denied* — U.S. ——, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983) (arrests made in Indiana based on officer's knowledge of warrants issued in Illinois); *Bandy v. Willingham,* 398 F.2d 333 (10th Cir.1968), *cert. denied* 393 U.S. 1006, 89 S.Ct. 497, 21 L.Ed.2d 470 (arrest in North Dakota validly based on outstanding Idaho warrant); *United States v. Tillery,* 332 F.Supp. 217 (E.D.Pa.1971) *aff'd* 468 F.2d 381 (arrest in Pennsylvania based on warrant issued in District of Columbia).

A perfect example of a case where a state court properly applied federal constitutional principles is *People v. Wolgemuth,* 69 Ill.2d 154, 13 Ill.Dec. 40, 370 N.E.2d 1067 (1977), *cert. denied* 436 U.S. 908, 98 S.Ct. 2243, 56 L.Ed.2d 408. In that case, a court in Iowa had issued an arrest warrant for the defendant. Officers in Illinois received information of the defendant's whereabouts. They proceeded to a private apartment in Illinois and arrested him based on their knowledge of the warrant issued in Iowa. The Illinois Supreme Court, faced with the same argument we are presented with here, made the following comments:

> "The fact that an arrest warrant had been issued distinguishes this case from

that in which police execute a *warrant-less* entry of a suspect's home. The primary function of the warrant requirement of the fourth amendment is to interpose prior to an arrest a neutral magistrate's review of the factual justification for the charges. ... This serves to relieve police officers, 'engaged in the often competitive enterprise of ferreting out crime,' of the responsibility of drawing neutral and sober inferences regarding a suspect's criminality. ... It is this division of responsibility which militates against 'the dangers of unlimited and unreasonable arrests of persons who are not at the moment committing any crime.' ... The warrant requirement of the fourth amendment is not frustrated in this case by the distinctive fact that the arrest warrant was issued in a State other than that in which it was executed. Whether a valid foreign warrant is effective in Illinois is a matter of State, not constitutional, law. A suspect's constitutional right to have a neutral magistrate determine whether probable cause exists for his arrest is not undermined by Illinois' choice to extend comity to the determination of a magistrate from another State. The entry of the police into defendant's home was, therefore, properly executed pursuant to a valid Iowa warrant for the defendant's arrest." *Id.* at 1070.

The argument made by the Illinois Supreme Court is peculiarly applicable to the present case. That reasoning should be followed in this case, where the facts are substantially similar.

SHEPARD, J., concurs.

### ON PETITION FOR REHEARING

BISTLINE, Justice, On Denial of Petition for Rehearing.

The State's petition for rehearing did not challenge our disposition on the merits,[1] but was only directed at an award of costs to respondent. Respondent advised us that

on the basis of de minimus a post-decision brief on that narrow issue would not be submitted. Accordingly, we have concluded to not consider an issue upon which we do not have full adversary briefing, and now revise our opinion by removing therefrom the award of costs.

DONALDSON, C.J., and SHEPARD, BAKES, and HUNTLEY, JJ., concur.

---

1. The state's petition for certiorari addressed to the Supreme Court of the United States, challenging our decision on the merits, was denied.

*See also United States v. Hensley,* 713 F.2d 220 (6th Cir.1983).